[Nos. 36729, 36730. Department One. November 27, 1963.]

TIME OIL COMPANY, *Respondent*, v. INDEPENDENT PETROLEUM COMPANY *et al.*, *Appellants*.

R. D. ABENDROTH *et al.*, *Respondents*, v. CLIPPER OIL COMPANY *et al.*, *Appellants*.*

*Carroll & Verzani*, for appellants.

*Regal & McDonell*, for respondents.

HILL, J.—Two mandamus actions were consolidated for trial. Each action seeks to compel the officers of a corporation to transfer, on its corporate books, the ownership of

*Reported in 387 P. (2d) 86.

50 per cent of its stock (a different corporation in each case) into the name of the plaintiffs, who are also different in each case but closely associated, and to issue to the plaintiffs stock certificates evidencing their ownership.

In each case the stock sought to be transferred to the plaintiffs stood on the corporate records in the name of George A. Henrye at the time of his death, September 15, 1961. The corporations (Clipper Oil Company and Independent Petroleum Company, hereafter referred to as Clipper and Independent), and certain officers and directors of each company together with Sue M. Henrye, the widow of George A. Henrye and the executrix of his estate, oppose the transfer.

The Independent stock certificates sought to be transferred were endorsed in blank by Mr. Henrye and delivered to the plaintiff, Time Oil Company, by him on or after August 18, 1958; the Clipper stock certificates sought to be transferred were endorsed in blank by Mr. Henrye and delivered to the plaintiffs, R. D. Abendroth and C. Edward Miller, on or after August 8, 1961.

The trial court findings in each case reflected the endorsement in blank and the delivery of the stock certificates by Mr. Henrye to the plaintiffs.

In each case, the trial court found that there was no evidence that there "was any duress exercised or fraud perpetrated."

In the Clipper case, the trial court further found concerning certificate No. 29, endorsed in blank and delivered to the plaintiff R. D. Abendroth,[1] that there was an agreement signed by Mr. Henrye reciting that he was the trustee of said certificate for the benefit of Abendroth, and another agreement signed by Henrye and Sue M. Henrye, his wife, saying that they had no beneficial interest in that certificate. There were similar agreements relating to certificate No. 28, endorsed in blank and delivered to C. Edward Miller,[1] reciting that Mr. Henrye was the trustee of said certificate

[1] R. D. Abendroth and C. Edward Miller, officers of Time Oil Company, were the plaintiffs in the Clipper case.

for the benefit of Miller and that neither Mr. nor Mrs. Henrye had any beneficial interest therein.

In the Independent case, the trial court also found, concerning the certificates endorsed in blank and delivered to the plaintiff Time Oil Company, that there was an agreement signed by Mr. Henrye reciting that the certificates in question had been endorsed in blank and delivered by him to the beneficiaries of said certificates and that he was the trustee of said certificates for the benefit of the beneficial owners.

These findings of fact, to which no error is assigned, more than made a prima facie case for the entry of the judgments directing that a writ of mandate be issued in each case, commanding that the ownership of the stock be transferred to the plaintiffs and that certificates be issued evidencing the transfers.

There is an appeal from each judgment (consolidated for hearing) by those objecting to the transfer of the stock; and by their appeal they seek to have reviewed the following issues: First, whether the intention of the parties was to effect a valid transfer of the disputed stock certificates; second, whether there was a valid consideration for the transfer;[2] and, third, whether the transfer of the stock certificates was effective as to the marital community of George M. Henrye and Sue M. Henrye, his wife.

The first seems to us captious, there being no evidence of fraud or duress and no evidence of any lack of intent. The acts and written agreements of Mr. Henrye speak for themselves.

Any merit in the third depends upon the second. No citation of cases is necessary to support the proposition that Mr. Henrye was the manager of the community personalty; RCW 26.16.030. While he could not give valuable community property away without his wife's consent, to attack any transfers made by him it must be shown that the community had an interest in the property transferred

---

[2]The following sections of the Uniform Stock Transfer Act are applicable: RCW 23.80.010, 060, 080.

and that there was no substantial consideration for the transfer.

In the Clipper case, the 1459 shares of stock were originally in one certificate (No. 27) issued to Mr. Henrye. He endorsed it in blank and delivered it to Time Oil Company on or after April 15, 1959. The evidence of consideration paid to George Henrye for this stock was clear, *i.e.*, a check for $12,443.08 payable to George Henrye by Time Oil Company dated April 21, 1959. There was no suggestion that the Henrye marital community did not receive the proceeds of the check. This stock was carried as an asset on the books of Time Oil Company (certificate No. 27 for 1459 shares remaining in the name of Henrye, but endorsed by him in blank) until August 8, 1961, on which date Miller acquired 1167 shares and Abendroth acquired 292 shares from Time Oil Company. On that date, Mr. Henrye delivered certificate No. 27 for cancellation, and received a reissue in his own name of certificates Nos. 28 (for 1167 shares) and 29 (for 292 shares) representing the respective interests of Miller and Abendroth. Certificates Nos. 28 and 29 were, on or after that date, endorsed in blank by Mr. Henrye and delivered to Miller and Abendroth respectively together with the agreements which we have described.

The appellants established nothing in the Clipper case, which cast any doubt on the validity of the transfer of the Clipper stock from Henrye to Miller and Abendroth; and the judgment of the trial court should be affirmed.

In the Independent case, the evidence of consideration to Mr. Henrye and his marital community is not so obvious, but neither does it appear that the Henrye marital community ever had any interest in the stock transferred. The check of Time Oil Company, dated April 21, 1959, for $12,443.08 in payment for this stock was payable to Independent and not to Henrye personally; and this did raise a question of what interest, if any, Henrye had in the stock and what consideration he received for it.

The evidence was that Independent, long a quiescent corporation, was activated on August 18, 1958. On that date, according to the stock register, certificate No. 1 for 50

shares of class B common stock was issued to George A. Henrye, and certificate No. 6 for 12,193 shares of class A common stock was also issued to him. These certificates were never endorsed and are part of the property in Mr. Henrye's estate.

On that same day, certificate No. 2 for 50 shares of class B common stock was issued to George A. Henrye; certificate No. 7 for 12,193 shares of class A common stock was also issued to him. The testimony is that on that same date (August 18, 1958) Mr. Henrye endorsed these two certificates in blank and also signed, on that date, two agreements which are identical except for the description of the stock. The first two paragraphs are as follows:

"The undersigned acknowledges and agrees with_____ _____ and _____, hereinafter called beneficiaries, as follows:

"(1) That Certificate No. 2, for 50 shares of stock of Independent Petroleum Co. a corporation,[3] has been issued in the name of the undersigned, and that said certificate has been endorsed in blank and delivered by the undersigned into the possession of beneficiaries;

"(2) That the sole interest of the undersigned in and to said stock certificate is that of trustee for beneficiaries and either thereof who are the sole and exclusive beneficial owners thereof;"

The certificates with the agreements were delivered to Time Oil Company on that date and remained in its possession until presented for the purpose of having new certificates issued to Time Oil Company.

There has been no other Independent stock issued and no other transfer of Independent stock since August 18, 1958.

April 21, 1959, Time issued its check to Independent for $12,443.08 in payment for the stock.

The books of Independent on that date show cash receipts of $24,886.16 without identifying the source. The check for $12,443.08 from Time being in evidence, the

---

[3]The other agreement was identical except that it read: "That Certificate No. 7 for 12,193 shares of stock of Independent Petroleum Co. a corporation, . . ."

supposition is that the other $12,443.08 came from Mr. Henrye; and, giving Mr. Henrye the benefit of that supposition, we have Time Oil Company and Mr. Henrye each paying $12,443.08 for half of the outstanding stock of Independent.

An excerpt from the minutes of a special meeting of the Board of Directors of Independent, dated April 30, 1959, reads as follows:

"A part of the consideration for the purchase of this plant property is the investment of $12,443.08 in the voting stock of Independent Petroleum Co. by Time Oil Co."

We see nothing in this record to raise any issue of lack of consideration for the stock of Independent issued to Mr. Henrye, for which, on the date of its issuance, he acknowledges and agrees that his sole interest in the stock is that of trustee. There is no evidence that he ever had any beneficial interest in certificates Nos. 2 and 7, hence there can be no issue of consideration for their transfer by him as a conduit.

The judgment of the trial court in the Independent case should be affirmed.

As indicated, we find nothing in the evidence submitted by the appellants which should or could prevent the transfer of the stock to the plaintiffs in these two cases.

Both judgments are affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

January 20, 1964. Petition for rehearing denied.